The Illinois Appellate Court Third Division is now in session. The Honorable Justice Jesse T. Reck has his presiding. Good morning ladies and gentlemen. Good morning Your Honor. Please have a seat. Can you call the case please? Gibson v. Kowal. The counselors who are going to be arguing in this matter please approach the podium and you can identify yourselves for the record and what party you represent. Carmen Gaspero. G-A-S-P-E-R-O. Carmen in Italian is a man's name. G-A-S-P-E-R-O for Chad Kowal. Michael Haberly. H-A-E-B-E-R-L-E for Tim Gibbons. Fifteen minutes apiece. Do you want some time for rebuttal? Probably less than fifteen is a small issue Judge. I'm sorry? Probably less than fifteen but it's a small issue. Okay well I'm giving you fifteen minutes apiece. I'm just asking do you want some time for rebuttal? I will take the time for rebuttal. Thank you. A couple of minutes? A minute or two. Okay. Alright. Let's proceed. Good morning Your Honor. Please the court. My name is Carmen Gaspero for the appellant Chad Kowal. We're here today because in May of 2017. Well we're familiar with the facts here. So what's our standard of review here? It's de novo. De novo? Why is it de novo? The trial court applied the law to basically no evidentiary premises. There was no hearing, no evidence admitted to court. It simply ascribed the law to a certain set of conditions. So there was no evidentiary hearing however? Correct. Okay. Let me proceed. Okay. At the end of the day, I won't bore the court with the nuances and the details but at the end of the day, the father, I'll refer to him as the father and the son, Kowal and Kowal, the father put up $25,000 bail funds for his son to be released from jail. He was incarcerated because he failed to show up for a civil citation to discover assets proceeding in the daily center. Yeah was that an indirect civil contempt? Indirect, yes. Where are the funds now do you know? I think they're with the clerk of the district court of Cook County. Okay. In fact, I don't know that. I don't think that I know that. Okay. In fact, it was then that it said you had to file a motion, Mr. Kowal, to get your money back. Okay. So as a consequence of that motion getting filed, it went before the chancery judge. The chancery judge required notice to all relevant parties. Upon that notice, a motion for turnover was filed. Everyone was aware and no one disputed that the funds deposited belonged to father. Son was the arrested party. Did the bail bond itself say on its face that the funds were to be paid to your client or to his designee? Yes. So the document says, specifies that yes, it can be refunded to either the arrested party or the designee. Was there a stay placed on the judgment pursuant to this appeal? You say a stay? Was there a stay in place? Was there a request for a stay of the judgment after the motion for reconsideration? Yes, yes, yes. Okay, so there's a pending stay. As far as I know, there is a pending stay. So at the end of the day, the trial judge, taking a look at the facts and circumstances applied his analysis, which was that based on Section 1402, that these were assets that either belonged to or were in the control of or were in the power of direction of the arrested party, and therefore they belonged to the arrested party, and therefore were subject to turnover. Our argument, we disagree. That section of the Civil Procedure Code provides punishment procedures for third parties who fail to honor the citation freeze, which basically says if you get the citation, don't let money out the door. If you do, you're going to get penalized. What kind of money can't you let out the door? Money that is either belonging to the judgment debtor, money to which the judgment debtor may be entitled, and this is Section 1402F1, money that may be after acquired by the judgment debtor, money that becomes due to him. I believe the trial court applied those parameters, or at least that section, to decree that the property belonged to, was it the property of the arrested party, the son, and therefore subject to the turnover. Our argument is that it was never any of those things. It always belonged to Dad. Dad deposited the funds with the clerk to secure his son's presence at the contempt hearing three weeks later, and while they were in the possession of the clerk, those funds still belonged to Dad, until such time as the son did not show up for court. Did Mr. James Caldwell at any time throughout these proceedings ever come in and try to assert his right to the funds? Well, indirectly through his son, Judge, so it was actually him. My question is, did Mr. James Caldwell? He himself, no. Okay. Why not? Well, because it didn't come evident until after the fact that that was, he went to the clerk and said, can I have my money back? And they told him, go file a motion. And he found our firm and said, I need a motion filed to get my funds back. So there was no, but the only party in the matter was his son, so between the two of them, we initiated the proceedings in the name of the son. No other reason than that. On behalf of James Caldwell. On behalf of Chad Caldwell. No, but I mean, you said Chad Caldwell filed the motion to get the funds. Yes. But on behalf of the father. On behalf of his dad. Could I say some corrections there? Okay. And there was a specific provision in the motion that you don't release them to me, please give them back to my father. At any time, did you take a look at the Code of Civil Procedure section 12-107.5? That pertains to body attachment orders arising from a civil matter. Did you ever take a look at that? I'm sorry, Judge, that's a new one on me. No. The answer is no to that question. Because neither brief discusses it. And yet it talks about when funds can be returned to a respondent or other party posting the bond in a civil case. No, Judge, we didn't. I'm sorry. We did not find that one. This was a novel issue for, I think, everybody involved, including both judges. What about the argument, Goodman's counsel's argument with regards to the Pre-Trial Safety Act, that that's applicable here? Well, I think that if you're referring to 7.5 of the Criminal Code, 7.5 section 4, I think that tells us that the funds put on bail can be used for a fine, court costs, restitution, or defendant's attorney's fees. I think the closest hit there would be restitution, but restitution is a consequence of a finding, of a specific finding of, okay, you robbed the bank and then stole $50,000. You were arrested without $50,000. The store owner has proven that he's lost $50,000. You're going to get 10 years in jail and $100,000 or $10,000 in restitution costs. Hey, guess what? If you had $10,000 to put up for bail, that's going to be your first down payment. So restitution is uniquely a criminal issue. I think the section tells us that, Judge. I think it says section 1, 730 ILCS 5-5.6 of the Code of Corrections tells us that restitution is a specific consequence of a finding by the court that you owe restitution. There was no such finding in this case. Okay. So Chad Collar doesn't show up. All right. What's the next step for the court? This is a hypothetical. If he didn't show up for the, I think that then, at that time, the dad is out of luck. He was securing his son's appearance at court. But what happens to Mr. Chad Collar? What would be the next step for the circuit court to do here? If he doesn't show up for bail, I think then they would, jeez, I don't know. He would ultimately end up being convicted of contempt? Oh, yes. I'm sorry. Thank you for helping me, Judge. He loses his bail. His dad loses his bail. And then they go get him again. And now he's got bigger problems than just a civil judgment. So isn't the Pretrial Safety Act applicable then? Because it says upon conviction, right? Yeah, but I don't think he was ever convicted of anything. Pardon me? But, yes, that's a hypothetical. He wasn't convicted. Okay. I have a question about the provision in the bail bond. It does say clearly here that the person who signs underneath understands that the bail may be used for the defendant's fees, attorneys, restitution, and otherwise, right? Yes, Judge. So isn't Mr. James Caldwell on notice that the funds, he may never get them back because they may be utilized for other aspects of the action? Yes, sir. He was warned. But I think he would be able to read into that. And I think when you piece together the relevant codes, it tells us that those consequences are, if he was the bank robber and stole $10,000, and then there was a $10,000 bail by the parent, you'd watch out. There may be a conviction and restitution, and you'll lose your bail. In this case, it was a civil case over in the Chancery Division. He just didn't show up in court. And he did honor the terms of his bail. I don't think that the criminal code provisions on surrender of bail or appropriation of bail apply to a separate matter in the civil proceedings. Okay. One of the things that Gibson's counsel keeps referring to in the briefs is that, well, because the signature's on there, right? Chad Caldwell's signature's on there, therefore, it becomes his property. What's your response to that? I think that signature gives him the right to direct or request the funds be released. And under the power of that privilege, he asks that the court do release, would release the funds, but specifically back to his father who paid them in the first place. So isn't that by inference meaning that he has control over which way these funds should be utilized? I think it does, Judge. I think it does. But the question is, does this court bridge that premise to the conversion of the funds from ownership of dad simply placed in the custody of the clerk of the court until his son does or doesn't show up for court to being an attachable property in the title to the son for purposes of attachment? I don't know. I think eventually the question would then be, the takeaway from that would be any parent, any family in these circumstances would basically have to consider the right or the privilege or the chance of getting out of jail pending your hearing. Bail as basically being a payment and not bail. It's not a security anymore. It's basically a payment for release. Any other questions? Anything else? No. Thank you, Judge. I think your questions covered everything on my notes. Okay. And what's your request of relief? An order back to the circuit court, I'm sorry, the trial court directing that the clerk of the court, to pay the funds held and bailed to James Kowal, the father. Okay. Great. Thank you. Good morning. Good morning, Your Honors. May it please the court, my name is Michael Haberly and I represent Tim Giffens. Same question for you. What's our standard of review here? De novo. De novo? Yes, no evidentiary hearing. Was one requested? None was requested.  We're here because Chad Kowal first didn't pay a judgment and second, he didn't show up to court. That required his dad to post a bond. As you acknowledged, the language of the bond is very, very clear, that James Kowal provides that the bond may be taken for other purposes authorized by the court and that Dr. Kowal may lose all his money. That is something he acknowledged, he agreed to when he turned over those funds. He didn't have to do it, he decided to do it. Well, let me ask you this question. So Mr. James Kowal puts up the money, right? So he signs the form, the bail bond form, right? Why have Chad Kowal's signature on the form? Well, I think that's important that Chad Kowal's signature authority is at the bottom right of the form, and this is A95C358 is one of the copies of the bond we have, is the assignment of the bail bond by defendant. And that is a provision that allows Chad to authorize the release to someone else. That shows Chad has authority to assign. You can't assign something you don't have rights to. So Chad assigns the rights to his dad, right? And this is after he is already subject to a citation, which is served, and which he received the body of attachment as a result of not showing up. So that doesn't necessarily mean that he has ownership over the property. He's only given an opportunity to designate which way the funds may go, but he doesn't have ownership over the property. And what's evident here is that if he had ownership over the property, he'd just be able to get the funds, but he has to go to the court in order to release the funds, and he directed those funds to be distributed to his father. So it doesn't necessarily mean just because he signed it that he has ownership over the money, right? Correct, but ownership is not the 1402 standard as determined in Scarlato. This is why I think Scarlato is so important, because Scarlato is a case in which only there was a loan, three borrowers, only one of which was a judgment debtor. So Mr. Scarlato is the judgment debtor, and the loan is to all three parties. The loan is not a loan that Mr. Scarlato can just go to the bank and get a check for whatever amount. It's a construction loan. He is detailed in the case. He has to get the approval of various bank personnel before he can take it out. The funds never hit his account. They go to the non-debtor entities. So even though he's on the loan, he never receives a penny of that. He has to ask for the funds to be distributed to a third party. Same situation here. Chad Kowal does not have the funds in his account, but he goes to the court and says, I want these funds distributed to a third party, just like happened in Scarlato. In Scarlato, we're talking about a loan, and he had access to that. But where here, Chad Kowal doesn't have any access to those funds in the sense that he doesn't go to his father and say, I need you to give me a loan. Father puts up the money, right? It's his own money. And here, Chad doesn't sign anything in terms of, well, I owe you or whatever. He doesn't have access to those loans, those funds. So how is this factually similar to this case? Well, I think he has to ask in the same way that Scarlato had to go to the bank and say, I would like you to distribute to my co-borrowers. Here, Chad, one, has the ability to assign it, as we saw in the bond form itself, where he assigned it. And two, he filed the motion, and I think that's important, as the court recognized in its decision, that the fact that Chad Kowal filed the motion asking it to be turned over to a third party shows control. In the same way that even though Mr. Scarlato didn't have a penny of that, he was able to ask for it and ask a third party, Mr. Kowal is doing the same thing here. He's asking a third party, the court, to turn over these funds to himself. So I think that's where it's an unusual factual situation, and I think this is about as Scarlato's about-as-on point as he could in this situation, or at least that I think either of the parties has been able to find. If the situation were that Chad Kowal should give me the funds, because I'm going to distribute it to James Kowal, but here we have a situation where someone is saying, you know what, this isn't my money, so I want you to distribute this money to the person that put up the money. I still don't see how that signifies ownership here. But I don't think you need more control. I think it's the same as Scarlato, where the bank's money, the bank had the money, and then Scarlato says, I want you to give it to a third party, a non-debtor. In the same way, Chad Kowal didn't have the money, he doesn't have control of it, goes to a third party and says, I want you to turn over this money that was never in my possession. We don't dispute that the funds were never in Chad's account, but just like Mr. Scarlato, the funds never hit his account. He has the ability to say, I want these funds to go here. But Scarlato was on the line for the money that was pertaining to the loan, right? Correct. Mr. Kowal is on the bond form. But how is Chad Kowal on the line here for the funds? He's not asking for the funds for himself. He's saying, have this distributed to James Kowal. So how is that indicative that he has any kind of control, ownership, or anything to do with these funds? In two ways. I think, one, the assignment on the bond form shows control. But he had the ability to assign the funds, right, in the same way that Mr. Scarlato has the ability to say, I want you to pay to this third party. And in the sense that he filed the motion. It was his motion which indicates if he had no control, right, if there is no control for Mr. Kowal to do it, then he can't file a motion. He filed the motion thus indicating he has control, and this was, I think, an important factor that the court relied upon. So could he have asked for the funds to be distributed to him? Could Chad Kowal say, I want the funds, and don't give them to James Kowal. I want the funds. He could have. And then Mr. James Kowal would have needed to come in, and this is what the court noted, that there was no adverse claim. So James Kowal could have said, no, actually, I have a dispute for these funds. These funds don't go to Chad because Chad owes me the money or these are my funds. He didn't do that. Was James Kowal ever provided notice of these proceedings? He, I don't believe that he was except through his son and the representations of counsel that he was asking on behalf of his father. So aren't we dealing with an ex-party order here without the party in interest being present? Well, he has to assert his claim. There is no, based on the law on the fact that the bond form has Mr. Kowal acknowledging he may lose it, I don't see that he expected notice. Based on your argument, what you're saying is that because he signed a bail bond form, either party is a party of interest or they're co-owners or co-controllees of the funds. Therefore, the co-controllee here should be in court when there's a decision made based on the funds. Neither party provided notice. So it's, I don't see how, I think by signing that over, he gave up his rights to that and put it in the mercy of the court. He knew the case number. He knew the case. His son was the one who was asking to turn it over. There's no notice indicated on the motion to release the funds to the father. So I haven't found any case requiring notice to a bail bond provider when you're asking for distribution. Well, there aren't any cases in point indicating that, since you have two signatures on the bail bond form, that both individuals have a right to the funds, correct? By your logic, right? They have, both individuals have at least certain rights, right? They may not be equivalent rights. Right. So do they, are parties of interest then, right? They would be potentially a party of interest. Why potentially? Because I think, particularly James Carl's case, I mean, he's the one who put up the money, right? Yes, he put the money up. I think, you know, it's, I guess I fall back on the fact that, look, the petition to turn it over, the motion for turnover that Chad filed, you know, quote on behalf of his dad to turn it over to his dad, I find it, you know, striking that if that motion is going on with that notice to the father, that in some way, you know, the court's adjudication of that requires notice to the father. Well, my point about these questions is this. Either one would not be able to obtain the funds unless they went to court and got a court order releasing those funds. So where is the control for these individuals in terms of funds? They don't control these funds anymore. It's now in the jurisdiction and the purview, the control of the clerk of the Circuit Court of Cook County. So how do they have any control over these funds? I'm going to sound like a broken record, but I'm going to go back to Scarlato, right? The bank has control of the funds, and Mr. Scarlato's got to go apply to the bank and say, I would like you to make a distribution to this contractor. Here's the necessary papers, right? He's in any construction loan. In the same way, here, the co-auls, if they want their money back, have to go to the court and say, hey, I would like this money back. Mr. Haverly, I'm going to turn the page slightly. You agree that this is a civil case, right? Breach of contract, basically. Correct. And that this was an indirect civil contempt, right? I do, yes. With a writ because the guy didn't show up. He was found in indirect civil contempt. And if he shows up, then you can release the money. But otherwise, he's not to be released, right? Okay, so did you take a look at the Code of Civil Procedures, Section 107.5? Because it's pretty clear what's to happen with bond proceeds in a civil case. It talks about the contemnor's debt. It requires the court to make certain determinations prior to any turnover. That the fund shall be returned to the respondent or other party posting the bond unless the court, after inquiry, determines that. And then there's three factors, and they're conjunctive. There's an and. And one of the factors says the bond money belongs to the debtor as opposed to a third party. That's not the case here, right? This is talking about money belonging. We know that the money belongs to, I believe, a doctor co-op, right? I think the court's finding is that the money belongs because of the use of, one, the signature authority, right, the signing authority. So at that point, if he assigned it, he had the ability to. That's how you view belonging? That is under. So your belongings are just like, you know, if you have control over somebody else's belongings, they're your belongings? Well, I think that's not my opinion. That's Scarlato's. Scarlato's was looking because 1402 also uses those same words, belonging to the judgment debtor. And I had not before this morning looked at 107.5. I did during the initial argument on there. And I think, you know, that the findings in there are akin to what the court found for 1402. It's the same language belonging to the judgment debtor, which is the 1402 language as applied in Scarlato. Well, it's kind of interesting. Why didn't either party raise this issue with regards to this particular provision in the civil code? I think neither party was aware of it, Your Honor. Had we been aware of it, we would have raised it. All right. So we make an argument also that the Pretrial Fairness Act is applicable here. Are there any cases on point that indicate that it applies in civil cases? We were not able to find any cases either way on that proposition. The argument for its applicability, at least to my knowledge, is an issue of first impression from what we could find here. How it could apply, though, is the fact that, as Your Honor noted earlier, that the punishment for this would have been criminal. And so it was a bond posted in such a manner that we believe it applies. I think it could apply on that basis. If it doesn't apply, then we defer to the contractual language of the bond. We cited numerous cases showing that the bond is interpreted in contractual language, as a contract in Illinois, in which the bond itself, the contract, provides that it may be released for other purposes authorized by the court. Here the court found that it should be applied to the judgment, and we believe if the Pretrial Fairness Act does not apply governing that, then the contractual, we defer to the contractual language, which is another basis for affirmance, we believe. So we believe there are really three, the 1402 Scarlato position, the Pretrial Fairness Act, and then the contractual language. Nowhere in the section, the applicable section here, 110-7.5, is there any reference that the statute is applicable to civil cases, correct? Correct. So there would need to be a leak that it is a criminal proceeding within the civil case. We could not find any cases on point on that. Okay, counsel didn't know where the funds currently are situated. Do you know where they're situated? They're held with the clerk of court. The circuit court. Circuit court. Right, okay. And there was a state on the judgment then? Correct. Okay. You don't dispute that Dr. Kowal owns the money that is currently held by the clerk of the court? I don't dispute that it was his money that was deposited. By depositing it in the bond, I think he relinquished his rights subject to the contractual terms of the bond. Okay, so it's been seven years since the judgment, the default judgment, was entered. Has the underlying judgment ever been revived? It has. It has? When was that? I don't have a particular date. Okay. Anything else? Nothing else. All right, and what relief are you seeking? We're seeking you to affirm the judgment of the circuit court, which required the turnover of the funds. Okay, great. All right, thank you. All right, Roboto. Thank you, Justice. Justice Walker, deprived of my ability to persuade the court, I'm able to think quickly on my feet and take notes from my partner about a statute that I didn't read before today. Yes, we agree that Section 2 of 107.5 applies. The funds were not Chad's, they were Dad's, and they, therefore, should be released in pursuant to that statute. The Scarlato case, I think, is distinguishable and very useful for its purposes but not directly applicable here. In Scarlato, there was the loans and the power to direct, but in that case it was very carefully delineated how the bank, in that case, that was the target of the third-party citation, did a very sort of devious tap dance around the provisions of the act to try and get the loans out. And all of those were pretty transparent and found out by the court. And as such, they were determined to have been Fortuno 2F1 property, funds belonging to the judgment debtor, funds to which he may be entitled, funds which he may be there after acquiring or for which may become due to him. But I don't think the Scarlato case tells us that that money or those funds were Scarlato's. It just simply says those funds were Scarlato's. It simply says those funds fall into one of these three categories. And for those reasons, the bank is now subject to not using good judgment and heeding the warnings in Section 1402 that say, hey, if these funds fall into these four categories, don't let it out the door or else it's going to be on you. In this case, we simply have funds that belong to Dad. He puts them with the clerk. The son honors the terms of the bill. And at that time, I was struggling to understand why in our jurisdiction we don't have something specific as to this. And I think 107.5 is the answer. And I'll close with this. Last summer, four or five summers ago, I took all of my six children to Lancaster Castle with my wife. And in Lancaster Castle, it's not a palace. A castle is a military complex. There are dungeons where they would put prisoners who were arrested for various crimes and they would be released upon payment. It was basically a tax on families that were not wise enough to keep out of the – it was a very compulsory tax on people that were not wise enough or lucky enough to stay out of the way of the local lord. So the family could rustle up a lot of money and bring it to the jailer and say, here, we want our prisoner back. I think what our court has to think about is – the takeaway from today is if we have a party who has a family member incarcerated and they go and provide the funds to secure their presence at a subsequent hearing or trial, that if the terms of the bond are honored and the defendant is not subsequently convicted for something that requires restitution or court costs or fines or defendant attorney fees, then there's no transfer of title from the party providing the bail funds, in this case, dad, to some civil case judgment creditor. That's all I have to say. All right. One last question. So everything seems to come down to the form that was signed by both Chad Caldwell and James Caldwell with a notice very boldly stating that the court could determine ultimately how these funds are going to be utilized, which kind of is indicative of the fact that neither party that signed that form has control over these funds, but it's ultimately up to the court to determine how these funds are going to be utilized. The court made a decision here. They determined that the funds are going to be utilized by being provided to Mr. Gibbons. What's your response to that? Yes, sir. That premise guides us back to the statute. If the funds are, if the form was signed, the funds were subject to jeopardy, if, and the trial court's power here is guided by section 110.7.54 of the criminal code, those funds, even when you sign the form, they can be seized and taken away from you. You're at risk when? If there's fines, court costs, restitution, or attorney fees. I don't think the trial judge in the civil chancery division had the power to convert those funds. Okay. Based on that document. Thank you, Judge. And what's the relief you're seeking? Again, in order to the circuit court directing the trial judge to direct the clerk of the circuit court to release the funds to James Cobol, the dad. Okay. Thank you. Thank you, Judge. I'm sorry. Thank you, Justice. All right. So I want to thank counsels for presenting a very interesting issue to this court. We're going to take this matter under advisement. And I neglected to state at the outset that our other panel member, due to a family emergency, Justice Leroy Martin was not physically able to be here, but he's going to be listening to the tapes and will be participating in the disposition of this case as well. And again, I want to thank everybody. And this court is adjourned. And we'll take this matter under advisement.